## IN RE: The ARCHDIOCESE OF SAINT PAUL AND MINNE-APOLIS, Debtor.

### BKY 15–30125

United States Bankruptcy Court, D. Minnesota.

Signed December 28, 2017

Richard D. Anderson, Benjamin Gurstelle, Bryce D. Jasper, John R. McDonald, Charles B. Rogers, Aaron G. Thomas, Briggs and Morgan PA, Minneapolis, MN, Charles E. Nelson, Lindquist & Vennum LLP, Minneapolis, MN, for Debtor.

## JOINT MEMORANDUM TO ORDERS DENYING CONFIRMATION OF PLANS FILED BY THE DEBTOR AND THE CREDITORS COMMITTEE

ROBERT J. KRESSEL, UNITED STATES BANKRUPTCY JUDGE

Poor Nancy Joan Galatowitsch! On July 28, 2015, she filed her proof of claim. In her proof of claim, she described the sexual abuse that she suffered at the hands of a priest. In her own words she describes the horrors that she endured. She then goes on to describe, without the generalities found in most claims prepared by lawyers, the lifelong damage that she suffered as a result of her abuse. While the confidentiality promised to claimants prevents me from sharing any of the details of her story, it is a moving and compelling narrative.

Now she is dead. In the three years since this case was filed, Nancy Galatowitsch and at least seven other people who have filed proofs of claim have died, essentially depriving them of any meaningful compensation for the pain that they have endured. During that three year period, attorneys for the Archdiocese, the parishes, insurance companies, and the committee appointed to represent her interests have battled for victory.

Every chapter 11 case affects people. However, none has more to do with people than this one. 342 men and 111 women have filed proofs of claim. Most of those claims describe sexual abuse by priests. However, brothers, deacons, nuns, bishops, and lay teachers and coaches are among those described in proofs of claim. Eight claimants speak of sexual abuse during the 1940s; 66 describe abuse in the 1950s; 145 describe abuse in the 1960s; 161 claims describe abuse in the 1970s; 52 describe abuse in the 1980s; 9 people describe abuse in the 1990s; 8 people describe abuse in the in the 2000s; and 3 people describe abuse in the 2010s. Approximately ten of the claimants are now in their 80s, while there are about 60 who are in their 70s, and 50 who are in their 60s. It seems inevitable that as this case drags on and the battle among the parties endures, more people will die.

On the other side of the human equation are the individuals who committed the abuse and the individuals at the Archdiocese who exacerbated the problem by reassigning abusive members of the clergy and minimizing or suppressing the complaints of the victims. While the creditors committee seeks retribution for the wrongs suffered by victims, none of the people who committed the abuse in the first place or exacerbated it in the second place will suffer. The financial cost of compensation falls not on any of these people, but a completely different group of people. It falls on current employees, including priests, teachers, coaches, and on retired school librarians and others who have worked for the Archdiocese and the parishes and earned a modest retirement. The cost may fall on students at Catholic schools and their parents. It will fall on thousands of parishioners. And the cost

will be born by beneficiaries of the charity and other good works by the Archdiocese and the parishes. So for all of the discussion about "the Archdiocese," "the creditors committee," "the parishes,". "the insurance companies," this is really a case about people.

As I hope the orders denying confirmation have demonstrated, a resolution of this case will require an agreement among the Archdiocese, the victims, the parishes, and the insurance companies. It means that those parties and their lawyers must put aside their desire to win, and decide to put together a resolution that is fair to all of the *people* involved. The committee must put aside its desire for retribution. After all, whatever else the Archdiocese is, it is a corporation. Corporations do not suffer; only people suffer. The Archdiocese must put aside its desire to minimize pain, realizing that the personal pain its employees inflicted upon victims is inevitably going to result in financial pain being suffered by a new generation of parishioners and employees. The parishes who have been quick to blame the Archdiocese for the mess in which they find themselves, must consider the possibility of contributing something to compensate the victims of sexual abuse. The fact that the abuse may not be the legal responsibility of the parishes, which they vociferously argue, is hardly the point, anymore than their work to help the hungry and homeless are motivated by legal responsibilities. Even though the insurance companies have reached settlements, they too will have to return to the mediation process, in particular, those that reached settlements with the debtor without the agreement of the creditors committee. While there is nothing nefarious about what they did, those settlements have certainly contributed to the creditors committee's animosity.

Another source of funds for sexual abuse victims could be their own lawyers. All but 39 of the claimants hired lawyers to complete their proofs of claim for them. In exchange, virtually all of them agreed to pay their lawyers 1/3 or so of their recovery. Because of the complex formula for compensating victims, it is difficult to determine with precision what the total attorneys fees for victims' lawyers could be. Even under the debtor's current plan, attorneys fees for the victims individual lawyers could easily run between $30 million and $40 million, which is pretty hefty sum for completing proofs of claim. It could be even more under a future plan.

Therefore, I expect all of the parties to return to mediation. I expect them to mediate in good faith and I expect them to reach a resolution which will result in a consensual plan providing appropriate and timely compensation to those who have suffered sexual abuse at the hands of those employed by or affiliated with the Archdiocese.